Okay, U.S. v. Alcantara-Rueda. Thank you, Your Honor. Your Honor, my name is Kasia Kores, federal defender. I represent the appellant in this case, Mr. Alcantara-Rueda. In this case, Judge Thompson of the District Court initiated impermissible ex parte communication regarding the substances of witnesses' testimony to the upcoming sentencing hearing. Judge Thompson's conduct requires reversal because, one, he admittedly engaged in these ex parte communications, yet failed to offer compelling justification for these ex parte communications or to evaluate whether recusal was appropriate because a reasonable person would question his impartiality. Two, ex parte communications regarding a clearly substantive matter that relate to a critical stage of the proceedings violates an individual's due process rights. And, three, this Court cannot say with all certainty that the District Court could avoid being influenced by the communications that he initiated. Your Honors, in this case, the facts are undisputed. On the Friday prior to the sentencing hearing, Judge Thompson contacted the prosecutor and initiated ex parte communications. Let me ask you a question. It was actually his law clerk that contacted him first. Let's suppose it had only been the law clerk who had the conversation and had – now, this is not unusual in my experience to have a law clerk call to find out whether this was going to be presented or just for scheduling purposes or so on. Suppose Judge Thompson never got on the telephone. Is your concern that it was Judge Thompson on the telephone or that it was his office on the telephone? Your Honor, in this case, Judge Thompson did get on the telephone. I understand. I'm just trying to sort of split off what exactly is the problem that we're dealing with. Your Honor, the problem is that Judge Thompson and his clerk contacted the United States Attorney in this case, ex parte, to find out what witnesses were going to be present and the testimony of what their testimony was going to be. The purpose of the ex parte communication was to discover a clearly substantive matter that was going to be presented at the sentencing hearing. That violated Mr. Alcantara-Rueda's due process rights to be present at every critical stage of the proceeding and to have the opportunity to rebut or refute any information that was given to the court by the United States Attorney. And in this case, the phone call was, first the clerk was on the phone and then the United States Attorney was placed on hold and then Judge Thompson himself began to speak with the United States Attorney and ask what witnesses were going to be present and what their testimony was going to be. First, by even... So he called and he said, well, how many witnesses is he going to have and basically what are they going to cover, is that it? He admitted during the sentencing hearing, you're right, I contacted Ms. Gabor, I asked her what witnesses were going to be present, and I asked him what they were going to say. Well, just generally, not word for word. Your Honor, I don't believe that even if it was generally what the testimony was going to be, that that makes the distinction in this case. When the court initiated this ex parte communication and found out and inquired into the substance of a witness's testimony, regardless of whether it was general or specific, it still clearly violated Mr. Alcantara-Rueda's due process rights by going into a substantive area without a compelling justification or a reason or even a... I must say that I have a hard time with the due process argument, although I do find the behavior just on a judicial ethics basis quite disturbing. But the due process argument seems to me to be fairly difficult because on that realm, it seems to me it was probably a procedural rather than substantive discussion. There's still at least the issue of whether it was an ex parte communication that was improper, whether it was a constitutional violation. It's never done. You know, I believe that... We're just adding a transcript here. What page is it? I'm sorry, Your Honor, which... Sentencing transcript. ER-222 or 223 is where the discussion occurs that Judge Thompson admits that he did conduct an ex parte communication. 222. I brought to the Court's attention on ER-222 that it has come to my attention on Friday this Court had a conversation ex parte with the United States Attorney in this case. The Court answered, that's right, I did. Well, but after that happened, wasn't your office notified? Your Honor, the prosecutor called my office after the ex parte communication occurred and relayed to me that Judge Thompson had contacted her asking her what witnesses were going to be present and what their testimony was going to be. When the sentencing occurred, that's when the motion for recusal was made based on the conversation. Now, I do think that first the conduct of the district court initiating an ex parte communication required reversal, but I also believe that it is a due process violation as well. Regardless of what was stated by the prosecutor, the fact that the substance of these witnesses' testimony was discussed is the due process violation.  I don't see that in the transcript. Are you just assuming it was? Your Honor, at the very least, the role of each witness was discussed. Well, that's a little different from the substance of the testimony, so let's try to be specific since we want to be very careful. Your Honor, first I ---- She said, or the prosecutor said, I responded to you what witnesses would be there, essentially what their role was. I don't believe I related to you what they'd be testifying to. The judge said, that's correct. What I told you was simply what role they had in the assault, period. Court, that's correct. So that's where we're at. Your Honor, I believe ---- Tell me about the substance of their testimony. What part does that appear in in this transcript? Your Honor, I believe that it's ---- well, one of the problems is that it's unclear what was said exactly. She's stating ---- She said exactly they did not discuss the substance of the testimony, and the Court said that's correct. Now, you're saying, well, they're lying, or else you don't understand what's going on. Your Honor, I'm not saying that the Court is, in fact, lying. In fact, I'm asking the ---- So the Court says all that happened was something very formalistic. I said, who's going to testify, and who are they? So the prosecutor says, it's Joe Doves, and he was the officer on the scene. Your Honor, I think that by describing the role, that itself is substantive, because I might have disputed and refuted the role of each of these witnesses. And I think that even by merely describing the role of the agents involved goes into the substance, because the role could have been described as, this is the role, this is the agent that was ---- I understand your point. Thank you, Your Honor. The reason why this is a due process violation I think can be related to the United States Attorney's case. In that case ---- So when did these witnesses testify? Your Honor, they never did testify. They never did testify. They never did testify. At the beginning of the sentence in hearing, the Court stated because of the first motion for recusal, it did not intend on calling any witnesses and left it to the parties to call the witnesses. The United States Attorney stated that she did not intend calling the witnesses because she was going to abide by the plea agreement. The defense counsel also stated that it was not the intention of the defense to call adverse witnesses and only wanted the courts to follow the plea agreement in this case. So the substance of the witnesses' testimony was never put on or the witnesses never testified. Going back to the United States v. Thompson case, in that case, there was a baffling challenge made by the defense. And the prosecution was allowed to go sidebar and give ex parte its non-race-related reasons for striking potential jurors. This Court held that even assuming the reasons given by the prosecutor were totally justified, that case still required reversal. Because of the defense's inability to challenge the reasons given by the prosecutor, it could have been that the defense in that case would have said that the reasons were merely pretextual, but that opportunity was never given to the defense. And because ex parte communications are entirely forbidden, this Court reversed. I think that case is directly on point with this case. When ex parte communications occurred, and even if it was just the description of the role, it could have been that the defense would have disputed the role of each of those agents and offered a different explanation or objected to the description of each of those roles. Because that was denied to Mr. Alcantara-Rueda, that brings this case into a due process violation. But what was denied? I'm sorry? What was denied? The motion for recusal. Once the sentencing hearing occurred, the defense asked the Court to recuse itself after discovering about this ex parte communications. That motion was denied. Well, you could have brought those people on and asked them some questions, couldn't you? Done that? Your Honor, in this case, the witnesses that were available were adverse witnesses to the defense. And it was not, I believe, in the defense's best interest to call agents to the stand. Anything to address the merits, Jill? I'm sorry? Anything to address the merits of the enhancement issue at all? Yeah, you're already over your time, but apparently. No, that's okay. And I wasn't watching. I don't have a time thing here. Thank you. I'd like to reserve, then, the remaining time or any additional points. All right. May it please the Court? Your Honors, my name is Steve Cook, and I represent the United States in this matter. Your Honors, there was no dispute that there was no substance discussed in that ex parte communication. Let me tell you what bothers me about this communication. The law clerk got on the phone, and she made the inquiries, and that's not very unusual, and I'm not particularly bothered by it. But then why did the judge get on the phone? What I'm concerned about is that there was some sort of unspoken message at that point, whatever was actually said, with the judge getting on the phone when he could perfectly well have and did get the information to his law clerk, and then speak to the U.S. attorney in a situation in which we know that he was sort of annoyed with the U.S. attorney for taking, or at least there's an inference that he was annoyed that the U.S. attorney had agreed not to seek the aggravated assault enhancement, or at least that's the message the U.S. attorney could have gotten. Without any explanation, why did he get on the telephone? Quite aside from what was said. Your Honor, it's not clear from the record that the law clerk actually conveyed the information that the U.S. attorney had conveyed to the law clerk. So what? Why did he get on the telephone? Why did he send his law clerk to ask questions and then get on the phone and tell? Your Honor, that's not clear from the record. That's the problem. It's not clear from the record. I thought I saw something here that the purpose of the calls was to be able to estimate the length of the sentencing hearing. That's not on the record, but that's an inference. I read it. I read it. The purpose of the phone call was to estimate the length. No, I understand that part. What I'm asking is why. Did you read the record? I read it right there. The judge explains. On the record, the Court says that was for the purpose of setting aside time. That's true. I see where you're referring, Your Honor. Any doubt concerning the substance of what was discussed on that phone call, any question about it whatsoever was resolved during that hearing. But to understand my point, it isn't really what was discussed. It is whether there is an appearance of impropriety simply from the fact that he got on the telephone when he didn't need to get on the telephone. I understand, Your Honor. Any appearance of impropriety was resolved when, at the hearing and when undisputed, that there was no substance discussed during that phone call. At that point, when defense counsel acknowledged that she was not challenging the representations made by the prosecutor, at that point, any appearance of impropriety disappeared because we knew precisely what had occurred. There was no substance conveyed during that telephone call. And there could have been some unsubstantial substance conveyed to the U.S. attorney from the fact that the judge was so concerned about this that even though his law clerk had already gathered the information that would have dealt with the timing issue, he still got on the telephone? Your Honor, I don't think that's an inference we can make, given that defense counsel did not suggest that anything of substance was actually conveyed at the time when it could have been explored, at the time of the hearing itself. Nothing was discussed. No, there was no objection lodged. What time of the day was this? What time did the phone call take place? What time of the day? Your Honor, it took place on a Friday. I don't know what time of the day it actually occurred. And then the sentencing hearing was, I believe, the next Monday. So sometime in the intervening weekend. You don't know what time it took place? Not precisely what time it took place on Friday, no, Your Honor. See, because all the kind of crazy things happen about 3 o'clock on Friday. Well, that may entirely be the case. 3 to 4, somewhere in there. Your Honor, in any case. Now, let me ask you this. What prompted the U.S. attorney assistant to call defense counsel? She felt it was her obligation to do so. Notwithstanding a lack of substance in the conversation, the fact that the judge had made a phone call to her, she felt that she should disclose that to defense counsel. Well, did the judge present anything in record that the judge asked her to call counsel on the other side? No, there's not. There's nothing in the record to that effect. Or that a call went from the courtroom deputy or other court personnel to the defense counsel? No, Your Honor. There's no indication of that either, Your Honor. And what's a Monday calendar like at San Diego? Lengthy. What? Lengthy. Lightning? Lengthy. Very long. Of course, it depends on the judge and depends on particular items before that judge on that particular day, but it can be quite lengthy. And so scheduling would be an issue, would be a concern. Is that when they hear civil motions? Your Honor, honestly, I cannot speak to that. I know that civil motions are sometimes heard either before or after the criminal calendar, but on this particular occasion, I'm not sure. And in front of this particular judge, I'm not sure. I'd like, Your Honor, briefly to focus on the application of the aggravated assault guidelines, if I could. The judge undertook an independent review of the facts, given there was a conflict in the factual basis offered by the defendant. During the plea colloquy, he swore under oath that he intentionally resisted the arrest, and he did so by pushing agenies, Border Patrol agenies, into oncoming traffic on interstate 8. During an interview with the probation officer, he denied that. He said the only reason he made those statements was so that he could get out of jail earlier. Faced with that discrepancy ---- Why? Where did you get the fact that that's what the hearing was about? I'm sorry. Where did I get that? Yes. I understand you said that, but how do we know that that's why the hearing was held? Because the judge said, referring to the probation report, he said, it's unclear what happened on that night. Words to that effect. And that was after he made a discussion of the conflict between the plea colloquy testimony from the defendant and what he told the probation officer. In fact, defense-assigned counsel was not there that day. It was a standing counsel, and he even made mention of the fact, you obviously haven't read the probation report yet. I'm going to order an evidentiary hearing because of this conflict. It was ---- that was the conflict that motivated the judge to have the evidentiary hearing to begin with. Now, once that hearing was held, before that hearing was held, the defendant subsequently retracted the statements made to the probation officer, reaffirmed his statement that he had intentionally resisted arrest, and then he pushed ---- and in resisting arrest, he pushed the Border Patrol agent into oncoming traffic. Faced with those facts and faced with the defendant ---- Into oncoming traffic. Into the path of oncoming traffic. Towards oncoming traffic on interstate. In the path of oncoming traffic. The reason that matters is because there is a complete absence in the evidence in the record as to whether there was really any traffic coming at the time that he was pushed. Well, actually, Your Honor, there is some indication that at least the defendant suggests in their motion objecting to the probation officer's report suggesting aggravated assault guidelines. In their objection to that, they suggest that the defendant backed his car out of oncoming traffic on it because he was ---- there was a risk of harm. In fact, they specifically state ---- There was even a risk of harm. There's a difference between a risk of harm and intent to harm, and that's what this ---- my understanding is what this statute requires. What? The guideline requires. In other words, my understanding of this guideline, let's assume that oncoming traffic can be a dangerous weapon. Still, you have to demonstrate that he pushed him into the traffic, intending him to be hit, actually. And the judge found that that intent was satisfied by virtue of his statement. He never gave any notice to anyone that this was a theory. And it was never ---- it was not the probation report's theory. And nobody, in fact, flatly refused to tell anybody what his theory was, so that witnesses could have been put on. And so that's problem A. And problem B is what is the evidence that at the particular time that these pushes were made that was actually traffic that person could have intended him to be hit by? Regarding issue A, the defense was on notice that the facts stipulated to in the plea colloquy would be used against him. 1B1.2a of the sentencing guidelines instructs the court to apply the facts stipulated to by the defendant in finding the applicable guideline to use. The judge referred to Appendix A and then came up with 2A2.2, which is the aggravated assault guidelines. The reason we know they're on notice is because the defendant specifically said in their objection to the PSR, the facts which were alleged in the information and to which Mr. Alcantara must plead, must be the facts used to determine the guidelines. Mr. Alcantara Riera has been on notice of the facts surrounding push towards traffic and pled guilty only to that factual basis. That's at the excerpt of record, page 22. And the plea said push toward traffic traveling on Interstate 8, right? That's correct. And it suggests there was traffic traveling on Interstate 8, correct? The theory of the defense would render those words of the plea colloquy and of the plea agreement meaningless. And I don't think that's an appropriate construction of the plea agreement when it specifically says traffic traveling on I-8. Based on the defendant's statement that he intentionally resisted arrest, the form and the manner in which he resisted arrest was by pushing Agent E's towards oncoming traffic traveling on Interstate 8. Based on that. What page are you reading from now? I'm reading, that's from the plea agreement, Your Honor, the factual basis. I found that excerpt of record, page 9. Okay. And I thought it said, if I'm wrong, okay, push towards the traffic traveling on Interstate 8. Go ahead. Paragraph 1, defendant intentionally used force. The manner in which he used that force was by pushing towards the traffic on I-8. The judge appropriately found and could find and was not clearly erroneous in finding that the defendant had the requisite intent to cause great bodily injury. Thank you. Well, how big is Alcantara? Your Honor, Mr. Alcantara is, I would say, probably 5'10", less than 5'10". In fact, it's probably stated in the probation report that was submitted to the court. On the front page, it does describe his weight and height. Okay. How about the 5'8", 150? 5'8", 150. 5'8", 150. And I'm just curious, how big was the highway patrol?  That's correct, Your Honor. The evidence before the Court, Your Honor, on the first to address the argument, the notice that was given, there was no notice given to Mr. Alcantara-Rueda about the specific facts the Court was going to use to enhance Mr. Alcantara-Rueda's sentence beyond what the plea agreement had contemplated. That's clear by the rules and the law in this Court and by the sentencing guidelines that the factors the Court is going to use, specifically use in order to enhance a person's sentence, must be identified prior to the hearing so that the defense has the opportunity to object and respond. That clearly was not done in this case. And, in fact, the Court vehemently refused to do so. And despite the repeated requests by defense counsel to just let us know what you're considering. Additionally, the factors in this case and what is present before this Court, the aggravated assault guidelines should not have applied. First, the only thing on the record is that there was two or three cars that passed during this entire encounter, which was stated by one of the material witnesses, which was read into the record by the defense counsel. Secondly, there is absolutely no evidence that a court could find by clear and convincing evidence that Mr. Alcantara-Rueda had the specific intent to use the moving traffic on Interstate 8 as a dangerous weapon to cause bodily injury to the Border Patrol agent. There is no evidence on the record of that. And finally, it's undisputed and the government did not dispute and, in fact, inform the Court that Mr. Alcantara-Rueda was too intoxicated at the time to form the specific intent required for the aggravated assault guidelines to apply. And, in fact, that's why this case was negotiated and the plea agreement was formulated in the way that it was. Do we know what his blood alcohol rating was? No, Your Honor. But it was clearly undisputed and presented by the government that he was so intoxicated at the time of the arrest that the agents had to wait several hours before reading his Miranda rights because they were so concerned about his level of intoxication. Also, my understanding is that's the reason why the government did not support an aggravated assault to hand. Is that right? That's correct, Your Honor. That's exactly why the plea agreement was under the impeding an officer guidelines. Your Honor, based on these reasons, on the judge's conduct prior to the hearing, his refusal to recuse himself from this case, and that the lack of notice in this case and that the assault guidelines should not apply and there's no clear and convincing evidence that they could apply, this case must be reversed. And in light of the situation and in light of the fact that Mr. Alcantara Rueda has a right for a judge who has not considered ex parte communications, this case must be remanded to a different judge for sentencing purposes. Thank you. Well, in the you had a plea agreement here? Yes, Your Honor. What would the government agree to do? The government agreed to apply the obstructing an officer guidelines, which would have been a time-served sentence, which does not require a specific intent finding, but rather is just a general intent requirement. And the plea agreement is in the records at page 9. Okay.  Thanks. Thank you, Your Honor.
judges: Pregerson, Fernandez, Berzon